UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------- X
JKN Universe, LLC,

            Plaintiff,

   -against-

VVV Global Ent. LLC,

           Defendant.

------------------------------------------------------- X

Civil Action No. 1:25-CV-8234

**COMPLAINT**
**JURY TRIAL DEMANDED**

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff JKN Universe, LLC ("<u>JKN</u>"), by and through undersigned counsel, hereby brings this action for a declaratory judgment and damages for breach of contract and breach of the implied covenant of good faith and fair dealing by defendant VVV Global Ent. LLC ("<u>VVV</u>"). In support of its claims, JKN alleges as follows:

### PRELIMINARY STATEMENT

1. This action presents the Court with a straightforward dispute. Beginning in 2023, JKN and VVV entered into a Management Agreement whereby JKN granted VVV a license to manage Miss USA and Miss Teen USA pageants throughout the United States. A material term of their agreement required that VVV manage the pageants in such a way that would not bring the brand into disrepute. VVV failed to do so and has been the subject of various news articles and complaints that cast JKN in a bad light. JKN endeavored to salvage the parties' business relationship to no avail and accordingly was constrained to seek relief in this forum for damages in excess of $75,000.00.

## PARTIES

2. Plaintiff JKN is a Delaware limited liability company with one member, JKN Legacy, Inc. JKN Legacy, Inc. is a Delaware corporation with its principal place of business located at No. 251 Little Falls Drive, Wilmington, DE 19808.

3. Defendant VVV is a Florida limited liability company with offices at 5011 Ocean Boulevard, Suite 305, Sarasota, Florida 34242. Based on information and belief, VVV has one member, Laylah Loiczly. Ms. Loiczly is a resident of Sarasota County, Florida.

## JURISDICTION AND VENUE

4. This Court has original jurisdiction over this civil action pursuant to 28 U.S.C. § 1332(a) (diversity) because Plaintiff and Defendant are citizens of different States and the amount in controversy exceeds the sum or value of $75,000.

5. This Court has personal jurisdiction because VVV consented to jurisdiction in this forum as set forth in Section 4.06 of Management Agreement and, on information and belief, VVV transacted business in New York from which this claim arises.

6. Venue is proper in this judicial district because it is where a substantial part of the events or omissions giving rise to Plaintiff's claims occurred. See 28 U.S.C. § 1391(b).

7. Venue is also proper in this judicial district because the Parties consented to litigation in this forum pursuant to Section 4.06 of the Management Agreement.

## GENERAL ALLEGATIONS

8. JKN owns a proprietary system for conducting the world-renowned annual beauty and communication skills pageants known as the Miss USA and Miss Teen USA pageants.

9. On July 28, 2023, JKN entered into a Management Agreement with VVV (the "Management Agreement") whereby JKN engaged VVV "to assume the operations, direction,

2.

management and supervision" of the Miss USA and Miss Teen USA pageants. Attached hereto as Exhibit 1 is a true and correct copy of the Management Agreement.

10. Pursuant to Section 1.02 of the Management Agreement, VVV had the right to "all profits" and the obligation to "pay when due all expenses" relating to the pageants.

11. Pursuant to the Management Agreement, VVV also "agree[d] to provide and maintain in full force and effect, at [VVV's] sole expense" certain minimum liability insurance as set forth in Section 1.05.

12. Among other things, VVV was required to "operate the [Miss USA and Miss Teen USA pageants] in accordance with the operating standards developed by" JKN and "maintain in full force and effect all necessary licenses and permits." Exhibit 1 at § 1.02(a) & (c).

13. In exchange for the license to operate the Miss USA and Miss Teen USA pageants, VVV was obligated to pay an initial fee of $255,137.00 and subsequent annual fee(s) of $375,000.00. Exhibit 1 at § 2.01.

14. Section 3.02(iv) of the Management Agreement states that JKN may terminate the Agreement upon thirty days' prior written notice if:

> Manager's improper action(s) or inaction(s), as the case may be, results in any situation or occurrence which subjects Manager to public scandal, disrepute, widespread contempt, public ridicule, or which is widely deemed by members of the general public, to embarrass, offend, insult or denigrate individuals or groups, or that will tend to shock, insult or offend the community or public morals or decency in our reasonable and good faith opinion.

***VVV's Mismanagement Under the Management Agreement***

15. Based on information and belief, VVV appointed Ms. Loiczly, also known as Laylah Rose, as CEO, President, and director of the Miss USA and Miss Teen USA pageants.

16. Based on information and belief, VVV engaged a production company to assist in securing a major network deal to televise the pageants and hired the production company's

Executive Producer as Director of Operations for Miss USA 2023, but failed to pay the production company or Executive Producer for its services.

17. VVV entered into a Production Agreement with RB Entertainment, Inc. in or about September 2023 for the production of two programs for broadcast, entitled "MISS USA" and "MISS TEEN USA," but despite services rendered, VVV failed to pay amounts owed to RB Entertainment, Inc. in excess of $2,000,000.00. Based upon information and belief, it was not until after RB Entertainment, Inc. initiated a lawsuit against VVV that VVV issued payment.

18. In addition to securing broadcasting for the pageants, the Management Agreement required VVV to issue invoices and send payments to pageant winners, pageant partners, and all other parties Miss USA contracted with for purposes of presenting the pageants.

19. In 2023, VVV issued letters to certain State Directors demanding that they not conduct pageants. Based on information and belief, these demand letters were issued by VVV as a result of its failure to obtain or maintain the required licenses.

20. VVV additionally failed to file franchise disclosure documents for franchises operating in the U.S. which resulted in undue delays in operating various pageant events, monetary losses, miscommunications with pageant partners, and harm to the Miss USA and Miss Teen USA brands.

*JKN's Effort to Correct VVV's Mismanagement*

21. In 2024, JKN made clear that all management issues regarding the Miss USA and Miss Teen USA pageants would be handled by VVV. Indeed, upon learning of the multiple failures in VVV's management and operation of the Miss USA and Miss Teen USA pageants, JKN entered into a Settlement Agreement with VVV, dated March 1, 2024 (the "Settlement Agreement"), that amended certain terms of the Management Agreement. JKN entered into the Settlement

4.

Agreement in hopes that the additional terms would correct and alleviate the management issues it was aware of at the time of executing the Settlement Agreement. Attached hereto as Exhibit 2 is a true and correct copy of the Settlement Agreement.

22. The Settlement Agreement implemented "Rules of Engagement," reiterated VVV's obligation to collect and issue payments, and confirmed "[f]or the avoidance of doubt . . . the Management Agreement as amended remains in full force and effect." Exhibit 2 at § 13.

23. Not long after executing the Settlement Agreement, JKN learned of distinct management concerns relating to VVV's treatment of pageant winners.

*VVV's Mistreatment of Pageant Titleholders*

24. In May 2024, Miss USA 2023 Noelia Voigt resigned from her position alleging the mismanagement and harassment she experienced from Ms. Loiczly.

25. Specifically, in her resignation letter, Ms. Voigt maintains: "[t]here is a toxic work environment . . . that, at best, is poor management and, at worst, is bullying and harassment." According to Ms. Voigt, "[Ms. Loiczly] was generally inaccessible for communication" and Ms. Voigt "would have to follow up multiple times to get a response from [Ms. Loiczly] (sometimes as late as a month later)." Ms. Voigt stated that Ms. Loiczly's communications to Ms. Voigt were "often cold and unnecessarily aggressive" and "accusatory." According to Ms. Voigt, Ms. Loiczly even "threatened . . . disciplinary action, including taking away [Ms. Voigt's] salary."

26. Based on Ms. Voigt's resignation letter, VVV selected ineffective chaperones and traveling companions, and at times, neglected to provide a chaperone or companion at all, despite VVV's contractual obligations to do so.

27. Based on information and belief, VVV did not prepare Ms. Voigt for the Miss Universe pageant or provide her with the required national costume.

28. Based on information and belief, VVV did not provide pageant winners with the necessary tax documents in a timely manner or at all.

29. Despite Ms. Voigt's resignation and move out of the apartment designated for her by Miss USA as part of the terms of her tenure, VVV failed to continue making rental payments or otherwise terminate the lease such that the residential property issued a Three Days Notice letter, that if the outstanding rent owed was not paid, it would result in the initiation of eviction proceedings. Ms. Loiczly did not respond to JKN's query for an explanation.

30. Also in May 2024, Miss Teen USA 2023 UmaSofia Srivastava resigned from her position as a result of VVV's mismanagement. According to Ms. Srivastava, her interactions with Ms. Loiczly were "degrading, aggressive, and made [Ms. Srivastava] feel silenced."

31. Based on information and belief, despite multiple requests, VVV did not pay, or unduly delayed in paying, scholarship money owed to Ms. Srivastava.

32. Despite these public resignations, which led to several news articles and inquiries about VVV's mismanagement, VVV did not change the way it managed the pageants.

33. On or about October 2024, JKN began learning of VVV's continued poor treatment of contestants and pageant winners that was not in line with JKN's expectations.

34. In 2024, Ms. Alma Cooper was announced the winner of the Miss USA pageant, becoming the first active member of the armed forces to wear the crown. Ms. Cooper would earn an annual guaranteed compensation of $100,000.00 for serving as Miss USA.

35. Just five days before Ms. Cooper was to board a plane to Mexico City for purposes of participating in the Miss Universe pageant as Miss USA, Ms. Cooper reported to JKN that her country costume was still not complete as a result of VVV's negligence. Ms. Cooper also inquired as to how to pay for overweight luggage fees and whether she was limited to a certain number of

suitcases when travelling to the Miss Universe pageant—questions that had previously gone unanswered by Ms. Loiczly. JKN promptly responded to Ms. Cooper and separately communicated to Ms. Loiczly that VVV needed to confirm in writing that it would pay for Ms. Cooper's luggage fees. JKN also instructed that a delegate manager should handle further communications with Ms. Cooper as it seemed that Ms. Loiczly was refusing to do so effectively.

36. As Manager, VVV was responsible for issuing payment to pageant winners. As of June 2025, VVV has not paid Alma Cooper for rendering services as Miss USA nor has VVV reimbursed Ms. Cooper for expenses associated with rendering such services.

37. Rather than honor the esteemed Miss USA winner, VVV exacerbated its failure to pay by ignoring collection attempts from Ms. Cooper's agent or otherwise claiming harassment in response to receiving a single invoice of non-payment.

*VVV's Mismanagement Spreads and JKN Terminates Agreement*

38. In March 2025, a long-standing partner to the Miss USA pageants expressed to JKN "the reputation and integrity of the Miss USA and Miss Teen USA Brand [is] at serious risk" as a result of "ongoing communication challenges with Laylah Rose."

39. Based on information and belief, VVV unduly delayed in paying or failed to pay amounts owed to various vendors and partners to the Miss USA and Miss Teen USA pageants.

40. Additionally, despite VVV's obligation to maintain liability insurance, VVV did not provide proof of insurance to JKN.

41. On July 17, 2025, JKN issued to VVV a termination letter, entitled Termination of Management Relationship, that identified eight separate bases for termination of the Management Agreement.

42. Despite receiving the termination letter, VVV's mismanagement and breach of the Management Agreement continued. On or about August 9, 2025, JKN became aware of VVV's

failure to issue a $10,000 Teen USA Scholarship to Miss Teen USA 2024 Addie Carver. Despite attempts by Ms. Carver's agent to resolve this issue with VVV's Ms. Loiczly since February 2025, Ms. Loiczly failed to meaningfully respond.

43. Based on information and belief from State Directors, the Miss USA and Miss Teen USA brands have been substantially tarnished by the apparent actions and/or inactions of Ms. Loiczly and VVV. In light of public accusations made against VVV and Ms. Loiczly, various state pageants experienced a drop in the number of contestants, resulting in a significant monetary losses.

44. In addition to the decreased number of contestants, JKN has been unable to secure a U.S. broadcaster to air or stream the Miss USA and Miss Teen USA pageants in English in light of the public scandals and various publications pointing to or referencing VVV's and Ms. Loizcly's mismanagement.

45. VVV's failure to satisfy its obligations under the Management Agreement and the Settlement Agreement has accordingly caused JKN actual damage and damage to its brand and reputation, in an amount exceeding $75,000.00, which will be determined at trial.

### FIRST CAUSE OF ACTION
**(Breach of Management Agreement)**

46. JKN realleges and incorporates by reference the allegations set forth in the preceding paragraphs 1 – 45 as if fully rewritten herein.

47. On July 28, 2023, JKN and VVV entered into the Management Agreement (Exhibit 1).

48. The Management Agreement provides, in pertinent part, that:

    a. VVV shall "operate the Business in accordance with the operating standards developed by" JKN and "maintain in full force and effect all necessary licenses and permits" (Section 1.02(a));

    b. VVV shall "maintain in full force and effect all necessary licenses and permits" (Section 1.02(c));

    c. VVV "agrees to provide and maintain in full force and effect, at [VVV's] sole expense, the following minimum insurance coverages" as prescribed in Section 1.05; and

    d. JKN may terminate if VVV's "improper action(s) or inaction(s), as the case may be, results in any situation or occurrence which subjects Manager to public scandal, disrepute, widespread contempt, public ridicule, or which is widely deemed by members of the general public, to embarrass, offend, insult or denigrate individuals or groups, or that will tend to shock, insult or offend the community or public morals or decency in our reasonable and good faith opinion" (Section 3.02(iv)).

49.     JKN performed all of its obligations under the Management Agreement except those conditions, covenants and obligations excused by VVV's breach.

50.     Defendant VVV materially breached its obligations under the Management Agreement by:

    a. Creating a toxic work environment for pageant winners, staff, and volunteers;

    b. Failing to maintain or provide proof of maintaining liability insurance;

    c. Failing to maintain necessary licenses during all relevant times;

    d. Failing to pay vendors and partners who provided services in support of the Miss USA and Miss Teen USA pageants or otherwise pay fees in accordance with the Management Agreement;

  e. Failing to pay scholarship monies to Ms. Srivastava and Ms. Carver;

  f. Failing to pay Ms. Cooper's salary; and

  g. Failing to reimburse expenses.

  51. As a direct and proximate result of Defendant VVV's breach, JKN has been damaged in an amount not yet ascertained and that is continuing, but that is substantially in excess of the jurisdictional minimum of this Court.

**SECOND CAUSE OF ACTION**
**(Breach of Settlement Agreement)**

  52. JKN realleges and incorporates by reference the allegations set forth in the preceding paragraphs 1 – 51 as if fully rewritten herein.

  53. On March 1, 2024, JKN and VVV entered into the Settlement Agreement (Exhibit 2).

  54. The Settlement Agreement provides, in pertinent part, that:

  a. VVV "will remit the license fee due under the Management Agreement" (Section 2(c));

  b. "The Parties agree to comply with the communication standards set forth on Exhibit A to this Agreement" (Section 3);

  c. "Each party . . . must respond substantively to each request from the other party within 48 hours of receipt of an email or other written request for information or within 48 hours of receipt of the request" (Exhibit A-1); and

  d. VVV "is responsible for the expenses of a titleholder and also receives full revenue from endorsements or appearances the titleholder might execute. That requires housing, salary, and reimbursement of travel and other expenses for all appearances." (Exhibit A-2).

55. JKN performed all of its obligations under the Settlement Agreement except those conditions, covenants and obligations excused by VVV's breach.

56. Defendant VVV materially breached its obligations under the Settlement Agreement by:

   a. Failing to respond to JKN's written requests, or to respond in a timely manner; and

   b. Failing to pay titleholders and/or reimburse titleholder expenses, or otherwise pay fees in accordance with the Settlement Agreement.

57. As a direct and proximate result of Defendant VVV's breach, JKN has been damaged in an amount not yet ascertained and that is continuing, but that is substantially in excess of the jurisdictional minimum of this Court.

## THIRD CAUSE OF ACTION
### (Breach of Implied Covenant)

58. JKN realleges and incorporates by reference the allegations set forth in the preceding paragraphs 1 – 57 as if fully rewritten herein.

59. Implied in the Management Agreement was a covenant that VVV would act in good faith and deal fairly with JKN, that VVV would do nothing to interfere with JKN's interests and commitments under the Management Agreement (and as amended by the Settlement Agreement), and that VVV would give at least the same level of consideration to the interests of JKN as VVV would give its own interests. Instead of complying with this duty, VVV acted in bad faith by:

   a. Enticing vendors, partners, and/or affiliates to provide services in support of the Miss USA and Miss Teen USA pageants without intent or plan to remit payment for said services, thereby exposing JKN to liability and bringing the brand in disrepute;

    b.   Mistreating pageant contestants, winners, staff and volunteers, whether privately or publicly, and causing them to endure hardships and incur expenses, while knowing that such discontent would damage JKN's interests and reputation; and

    c.   Creating a toxic work environment for many involved in the Miss USA and Miss Teen USA pageants.

60.    In breach of the implied covenant of good faith and fair dealing, VVV committed the acts alleged above for the purpose of consciously depriving JKN from the rights and benefits to which JKN was entitled under the Management Agreement as amended, and without considering the interests of JKN at least to the same extent as VVV does its own.

61.    As a direct and proximate result of VVV's actions, JKN has been damaged in an amount not yet ascertained and that is continuing, but that is substantially in excess of the jurisdictional minimum of this Court.

**FOURTH CAUSE OF ACTION**
**(Declaratory Judgment (28 U.S.C. § 2201))**

62.    JKN realleges and incorporates by reference each and every allegation set forth in paragraphs 1 through 61 as if fully set forth herein.

63.    An actual and justiciable controversy now exists between JKN, on the one hand, and VVV, on the other, with respect to whether (a) the Management Agreement has been terminated and (b) whether VVV's conduct is deemed by the general public to embarrass, offend, insult, shock, or otherwise denigrate public morals, individuals, groups, or the community.

64.    A judicial determination is necessary and appropriate at this time under the circumstances in order to resolve the parties' rights, duties and obligations arising out of the current dispute.

## **PRAYER FOR RELIEF**

WHEREFORE, JKN prays for relief as follows:

a. For compensatory monetary damages, in an amount to be proven at trial;

b. For restitution and disgorgement of all benefits and ill-gotten gains unjustly obtained by VVV through the acts complained of herein;

c. That the Court issue an Order awarding all other relief the Court finds equitable and just, including but not limited to, costs, attorney fees, and pre- and post-judgement interest and costs; and

d. For such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff JKN Universe, LLC hereby requests a trial by jury, pursuant to Rule 38 of the Federal Rules of Civil Procedure on all claims and issues so triable.

Dated: Los Angeles, California
October 3, 2025

Respectfully submitted,

SQUIRE PATTON BOGGS (US) LLP

By: /s/Adam R. Fox
Adam R. Fox
Hannah J. Makinde, Bar No. 5557723*
1120 Avenue of the Americas, 13th Floor
New York, NY 10036
+1 212 526 9889
adam.fox@squirepb.com
hannah.makinde@squirepb.com

Digna B. French**
Dorian N. Daggs**
200 South Biscayne Boulevard, Suite 3400
Miami, FL 33131
+1 305 577 7000
digna.french@squirepb.com
dorian.daggs@squirepb.com

Attorneys for Plaintiff JKN Universe, LLC

*Admission pending
**Pro hac vice applications forthcoming

14.