# EXHIBIT 1

## MANAGEMENT AGREEMENT

THIS MANAGEMENT AGREEMENT ("**Agreement**"), made as of this **28th** day of **July**, 2023(the "**Effective Date**"), by and between JKN UNIVERSE, LLC d/b/a The Miss Universe Organization, a Delaware limited liability company ("**Licensor**") and VVV GLOBAL ENT., LLC, a Florida limited liability company (the "**Manager**").

## RECITALS

WHEREAS, Licensor owns a proprietary system for conducting annual beauty and communication skill pageants for young women in each state and the District of Columbia of the United States of America (each a "**Miss USA State Pageant**"), the winners of which compete for the title of "Miss USA" as contestants to the annual "Miss USA Pageant" conducted by Licensor or its affiliates;

WHEREAS, Licensor also owns a proprietary system for conducting annual beauty and communication skill pageants for teenage females in each state and the District of Columbia of the United States of America (each a "**Miss Teen USA State Pageant**" and together with each Miss USA State Pageant, a "**State Pageant**"), the winners of which compete for the title of "Miss Teen USA" as contestants to the annual "Miss Teen USA Pageant" conducted by Licensor or its affiliates;

WHEREAS, Licensor entered into either a letter of intent or license agreement (collectively, a "**License Agreement**") with a licensee from each state and the District of Columbia (each a "**Licensee**") pursuant to which Licensor granted each Licensee the right and obligation to conduct a Miss USA State Pageant preliminary to the 2023 Miss USA Pageant or a Miss Teen USA State Pageant preliminary to the 2023 Miss Teen USA Pageant, as applicable, and to provide management services for such Licensee's titleholder throughout her reign;

WHEREAS, for purposes of this Agreement, the term "**Business**" shall mean the business Licensor conducts under the License Agreements, including all obligations Licensor owes Licensees thereunder, and the business of conducting the 2023 Miss USA and Miss Teen USA Pageants; and,

WHEREAS, Licensor desires to contract with Manager for the management and operation of the Business until the License Agreements expire, and Manager desires to manage and operate the Business, all upon the terms and subject to the conditions hereinafter set forth.

NOW, THEREFORE, in consideration of the mutual agreements of the parties, it is hereby agreed as follows:

SECTION I
SERVICES TO BE PERFORMED

Section 1.01.  Engagement.  Licensor hereby engages Manager, and Manager accepts such engagement, to assume the operations, direction, management and supervision of the Business and to render the additional services set forth or referenced in Section 1.02 and elsewhere in this Agreement (collectively, the "**Services**") commencing as of the Effective Date, and Manager agrees to and shall render the Services commencing on the Effective Date, upon the terms and conditions set forth in this Agreement.

Section 1.02.  Operations.  Manager shall have the right to all profits from the operation of, and shall bear and pay when due all expenses of the Business commencing on the Effective Date.  In particular, but subject to Section 1.03 below, Manager shall perform the following Services:

(a) operate the Business in accordance with the operating standards developed by Licensor;

(b) comply with the Business operation requirements of Licensor;

(c) maintain in full force and effect all necessary licenses and permits as may be required by law to operate the Business from time to time.  Manager shall comply with the conditions set forth in any such licenses and permits and at all times shall manage and operate the Business in accordance with such conditions and other applicable laws;

(d) develop and oversee the administrative, accounting, cash management, budgeting, operational, advertising, legal, personnel and purchasing policies and practices that relate to the Business;

(e) if it has actual knowledge of, promptly forward to Licensor any notices or other communications it delivers or receives with respect to: (i) any litigation, claim or proceeding (a) affecting Licensor or the operation of the Business or (b) affecting Manager, which would be reasonably expected to be material to the operation of the Business, and (c) any written threat to institute any of the same which is likely to give rise to any such litigation, claim or proceeding; or (ii) any notice of violation (or alleged violation) of any law relating to the ownership or operation of the Business which could expose Licensor or Manager to any criminal penalty or to any civil penalty or which would be reasonably expected to be material to the operation of the Business; and

(f) such other services in connection with the Business as reasonably requested by Licensor from time to time.

Section 1.03.  Limitation on Manager's Authority.  Manager shall not, without written approval of Licensor (which written approval shall not be unreasonably withheld or delayed), take any of the following actions with respect to the Business, except as may be otherwise expressly permitted by the terms of this Agreement hereof:

- 2

(a) enter into any contract, lease, license or obligation on behalf of Licensor;

(b) settle any litigation or claims against Licensor;

(c)  sell, transfer, license, sublicense or otherwise dispose of all or any portion of the Business;

(d) finance, refinance or otherwise encumber the Business or any portion thereof; or,

(e) take any other action that is prohibited under the terms of this Agreement.

Section 1.04.  Manner of Performing Services.  Manager agrees to devote such time and effort as may be reasonably necessary to perform the Services so as to allow the Services to be performed in a timely, efficient and first class manner in order to enhance the likelihood of success of the Business.  Manager shall provide the Services in accordance with this Agreement and in compliance with all applicable laws and regulations.

Section 1.05.  Insurance Requirements.  Manager agrees to provide and maintain in full force and effect, at Manager's sole expense, the following minimum insurance coverages which shall protect Licensor and related indemnified parties from all claims, liabilities, damages or loss to persons or property caused by, resulting from, arising out of or in connection with the acts or omissions of Manager (or anyone acting on Manager's behalf) under this Agreement, including without limitation claims that are the subject of Manager's indemnification obligations.

(a) Commercial Public Liability Insurance with limits not less than the equivalent of $1,000,000 USD per occurrence, $2,000,000 USD in the aggregate, and $5,000 USD medical expense (any one person). The policy must include participant legal liability and afford coverage for liabilities arising out of premises, operations, independent contractors, products, completed operations, personal & advertising injury, and liability assumed under an insured contract. Policy shall not contain and exclusion for sexual abuse or molestation. This insurance shall apply separately to each insured against whom claim is made or suit is brought subject to Manager's limit of liability. This insurance may not have a deductible or self-insured retention of over $5,000 USD.

(b) Commercial Automobile Liability Insurance. If any vehicle is operated in connection with the conduct of the Miss USA Pageant, Miss Teen USA Pageant or any related events, activities and operations (including personal appearances by the titleholder or the reigning titleholder or contestants), automobile liability coverage, including coverage of owned, non-owned and hired vehicles, with minimum limits of liability in the greater of (i) the amount required by all applicable laws, or (ii) the equivalent of $1,000,000 USD for any number of persons injured or killed in one accident, and a minimum limit of $300,000 USD for injury, destruction or loss of use of property of third persons as the result of any one accident.

- 3

(c) Workers' Compensation Insurance as required by applicable law, and Employer's Liability Insurance with a limit not less than the equivalent of $500,000 USD per occurrence.

(d) Excess or Umbrella Liability Insurance with suggested limits of $3,000,000 USD.

(e) Media Liability Insurance (Errors & Omissions) with suggested limits not less than $1,000,000 USD per claim and $1,000,000 USD annual aggregate, protecting Manager and Licensor for claims brought by third parties as a result of a media injury. Policy shall include coverage for, but not limited to, liabilities arising out invasion of privacy; defamation; libel; slander; disparagement (including product disparagement); plagiarism and other unauthorized use of material, names, or trademarks; breach of license agreement; copyright infringement; breach of implied contract arising out of the submission of ideas or any other breach or unintentional breach of contract relating to services performed under this Agreement. If this insurance is arranged on a "claims-made" basis, an extended reporting period must be sufficient to satisfy any indemnification obligations.

Section 1.06.  Books and Records.  Manager shall prepare and maintain, in accordance with standard industry practice, complete and accurate books of account and records containing all particulars which may be necessary for the purposes of complying with the terms and conditions hereof and Licensor's duly authorized representatives shall have the right upon five (5) business days' written notice during normal business hours to examine the books of account and records to the extent reasonably required to verify the accuracy of the financial statements. Manager shall provide make such books and records available to Licensor annually upon Manager's closing out Manager's books for the previous year.

Section 1.07.  Statement of Ownership; Personal Guarantee.  Exhibit B sets forth the details of Manager's ownership structure, including the entity owners, members and shareholders, as applicable, and their ownership interests (the "**Statement of Ownership**"). Manager's owners, managers, directors, shareholders, as detailed in the Statement of Ownership and their spouses, as applicable, hereby unconditionally and irrevocably guarantee to Licensor, jointly and severally and in their individual capacity, the punctual payment and performance when due of the obligations arising under this Agreement (the "**Guarantors**"). In the event of Manager's failure to pay or perform all or part of Manager's obligations due under this Agreement, the Guarantors agree to pay Licensor in a timely manner all amounts not paid by Manager. In addition, the Guarantors agree to pay all reasonable attorneys' fees and all costs and expenses incurred in collecting or compromising any indebtedness of Manager's guarantees hereunder or in enforcing this personal guarantee against Guarantor. This personal guarantee is in no way conditioned or contingent on any attempt to collect Manager's payment obligations from any other person obligated with respect to Manager's obligations or any other guarantor of Manager's obligations. This personal guarantee shall be binding on the Guarantors and shall inure to the benefit of Licensor and Licensor's successors, designees and assigns. The obligations of Guarantors under this personal guarantee shall remain in full force and effect notwithstanding the death or disability of Guarantors. By signing the Statement of Ownership in Exhibit B, the Guarantors agree to be bound by this personal guarantee.

- 4

Section 1.08.  Representations and Warranties.  Manager represents and warrants that:

(a) It has been duly organized and is validly existing and in good standing under the laws of the State of Florida, with full corporate power to conduct its business under such laws; and

(b) This Agreement constitutes the legal, valid and binding obligation of Manager, enforceable against Manager in accordance with its terms, and the execution, delivery and performance of this Agreement by Manager does not and will not conflict with, violate or cause a breach of any agreement, contract, instrument, order, judgment or decree to which Manager is a party or any judgment, order or decree  to which Manager is subject.

## SECTION II
### LICENSE FEES AND EXPENSES OF MANAGER

Section 2.01.  License Fees. Licensor shall collect all license fees owed by the Licensees under the License Agreements (the "**License Fees**"), subject to the terms of such License Agreements, for the 2023 State Pageants, and Licensor shall pay Manager the sum of the License Fees less an initial fee of Two Hundred Fifty Five Thousand One Hundred Thirty Seven U.S. Dollars ($255,137.00) as compensation for Manager operating the Business as provided hereunder. Should the Term (defined in Section 3.01 below) extend past the 2023 State Pageants, Licensor shall continue to collect all License Fees, and Licensor shall pay Manager the sum of License Fees less an annual fee of Three Hundred Seventy Five Thousand U.S. Dollars ($375,000.00) as compensation for Manager operating the Business as provided hereunder.

Section 2.02.  Expenses of Manager.  Manager agrees that the License Fees are intended to cover all of Manager's general and administrative overhead, and all salary and other compensation of Manager's employees and all expenses of operating the Business and shall be the full consideration payable to Manager under this Agreement.

Section 2.03.  Production Costs.  Manager acknowledges and agrees that Manager is responsible for the payment of all production costs for the 2023 Miss USA and Miss Teen USA Pageants. In addition to the foregoing, Manager agrees that Manager is solely responsible for paying any and all taxes associated with the operation of the Business and any and all costs, fees or premiums associated with the insurance requirements of Section 1.05.

## SECTION III
### TERM

Section 3.01.  Term.  The term of this Agreement shall commence upon the Effective Date, subject to the termination provisions hereinafter provided, and shall continue until the earlier of the day after the 2025 State Pageants or all required regulatory approvals have been obtained (the "**Term**"), at which time the parties shall execute a definitive License Agreement in the form attached hereto as Exhibit A, subject to customary terms and conditions that are mutually satisfactory to the parties.

Section 3.02.  Termination Rights.  Notwithstanding any provision of Section 3.01 to the contrary,

(a) The non-defaulting party may terminate this Agreement in the event that a party hereto shall be in default of any of the covenants or obligations hereunder or is in violation of any applicable law, which default/violation is not cured within thirty (30) days following the giving of written notice by the non-defaulting party to the defaulting party, provided however, said period shall be extended as long as reasonably necessary if the party in violation promptly institutes curative measures and thereafter diligently and continuously pursues the same.

(b) Licensor may terminate this Agreement upon thirty (30) days' prior written notice in the event that

(i) the License Agreements are terminated;

(ii) Licensor elects, in its sole discretion, to no longer conduct Miss USA Pageants and Miss Teen USA Pageants;

(iii) Manager fails to purchase or maintain any insurance required by this Agreement; or

(iv) Manager's improper action(s) or inaction(s), as the case may be, results in any situation or occurrence which subjects Manager to public scandal, disrepute, widespread contempt, public ridicule, or which is widely deemed by members of the general public, to embarrass, offend, insult or denigrate individuals or groups, or that will tend to shock, insult or offend the community or public morals or decency in our reasonable and good faith opinion.

## SECTION IV MISCELLANEOUS

Section 4.01.  No Joint Venture, etc.  Nothing contained in this Agreement shall constitute, or shall be deemed to constitute, a partnership, agency, joint venture, or other similar relationship.  Manager shall be deemed to be an independent contractor for purposes of this Agreement.

Section 4.02.  Indemnification.  Manager shall indemnify, defend and hold harmless Licensor against and in respect of any and all claims, demands, losses, costs, expenses, obligations, liabilities, damages, recoveries and deficiencies, included interest, penalties and reasonably attorneys' fees that Licensor shall incur or suffer, which arise out of, result from, or relate to (i) any breach of, or failure by Manager to perform in accordance with the terms hereof, any of the Services, including any breach of the representations, warranties, covenants or agreements of Manager set forth in this Agreement, and (ii) the operation of the Business (or the failure to operate the Business) after the Effective Date by Manager.

Licensor shall indemnify, defend and hold harmless Manager against and in respect of any and all claims, demands, losses, costs, expenses, obligations, liabilities, damages, recoveries

- 6

and deficiencies, included interest, penalties and reasonably attorneys' fees that Manager shall incur or suffer, which arise out of, result from, or relate to (i) any breach of, or failure by Licensor to perform in accordance with the terms hereof, including any breach of the representations, warranties, covenants or agreements of Licensor set forth in this Agreement, and (ii) the operation of the Business (or the failure to operate the Business) prior to the Effective Date by Licensor or Licensor's prior Licensee(s).

Section 4.03.  No Fiduciary Duty.  Nothing in this Agreement, in any other document, agreement, or instrument entered into between Manager and Licensor, or in connection with any relationship between Manager and Licensor governed by this Agreement or otherwise shall create, constitute, or imply any fiduciary duty upon Manager as the result of Manager's operation of the Business as set forth herein, or otherwise.

Section 4.04.  Non-Assignability.  Manager may not assign to any third party any of its rights or obligations under this Agreement, in whole or in part, without the express prior written consent of Licensor to such assignment, which consent may be granted or withheld by Licensor in its sole discretion.  Any purported assignment by Manager without Licensor's approval shall be null and void and of no force or effect.

Section 4.05.  Notices.  Any notices of any kind which either party may desire or be required to serve on the other in connection with this Agreement shall be in writing and served by certified mail, postage prepaid, addressed to the party to be served at the address specified for that party on the first page of this Agreement, or such other address as shall be designated by like notice, or by personal delivery.  Service of any such notice by mail shall be deemed to have been given upon the date of mailing.

Section 4.06.  Governing Law and Venue.  This Agreement shall be construed in accordance with the laws of the State of Delaware, without regard to its conflict of laws principles. Any legal action (including judicial and administrative proceedings) with respect to any matter arising under or growing out of this Agreement, shall be brought in a court of competent jurisdiction in the City and County of New York, New York. Each Party hereby consents to the jurisdiction and venue of such courts for such purposes.

Section 4.07.  Attorney's Fees.  In the event that any claim, suit, action or proceeding is instituted or commenced by either party hereto against the other party arising out of this Agreement, the prevailing party will be entitled to recover its reasonable attorneys' fees and court costs from the non-prevailing party.

Section 4.08.  Entire Agreement.  This Agreement sets forth the entire understanding between the parties concerning the subject matter of this Agreement and incorporates all prior negotiations and understandings.  There are no covenants, promises, agreements, conditions, or understandings, either oral or written, between the parties relating to the subject matter of this Agreement other than those set forth herein.  No representation or warranty has been made by or on behalf of any party to this Agreement (or any officer, director, employee, or agent thereof) to induce the other party to enter into this Agreement or to abide by or consummate any transactions contemplated by any terms of this Agreement, except representations and warranties, if any, expressly set forth herein.  No alteration, amendment, change, or addition to

- 7

this Agreement shall be binding upon either party unless in writing and signed by the party to be charged.  The submission of an unexecuted copy of this Agreement shall not constitute an offer to be legally bound by any provision of the document submitted, either currently or in the future; and no party shall be bound by this Agreement until it is fully executed and delivered by all parties.

       Section 4.09.   <u>Successors and Assigns; No Third-Party Beneficiaries</u>.  The provisions of this Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and permitted assigns.  This Agreement is not intended to, and does not, confer upon any person other than the parties hereto, any rights or remedies hereunder.

       Section 4.10.  <u>Headings</u>.  The headings and other captions in this Agreement are for convenience and reference only and shall not be used in interpreting, construing or enforcing any provision of this letter agreement.

       Section 4.11.  <u>Counterparts</u>.  This Agreement may be executed in counterparts.  A signed copy of this Agreement delivered by facsimile, docusign, .pdf format, e-mail or other means of electronic transmission shall be deemed to have the same legal effect as delivery of an original signed copy of this Agreement.

*[Signature page follows]*

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed as of the Effective Date.

JKN UNIVERSE, LLC D/B/A THE MISS   VVV GLOBAL ENT. LLC
UNIVERSE ORGANIZATION

By: _____**Amy Emmerich**_____        By: _Laylah Loiczly_____

Its: _____**CEO**   Its: _Laylah Loiczly President_

- 9

## EXHIBIT A
### License Agreement

*See attached.*

## EXHIBIT B
### Statement of Ownership; Personal Guarantee

| OWNERSHIP OF LICENSEE | |
| --- | --- |
| OWNER/MEMBER/SHAREHOLDER | PERCENTAGE OWNERSHIP |
| | 100 % |
| | |

By signing below, the undersigned, in its individual capacity, and its spouse, as applicable, agree to be bound by the terms of the personal guarantee of as set forth in Section 1.07.

[OWNER 1]

By: _____

By: _____

[OWNER 2]

By: _____

By: _____

- 11