**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JKN UNIVERSE, LLC,<br><br>       Plaintiff,<br><br>  v.<br><br>VVV GLOBAL ENT. LLC,<br><br>       Defendant. | 1:25-CV-8234-LJL<br><br>Hon. Lewis J. Liman |
| VVV GLOBAL ENT. LLC,<br><br>       Counterclaimant,<br><br>  v.<br><br>JKN UNIVERSE, LLC, d/b/a THE MISS<br>UNIVERSE ORGANIZATION<br><br>       Counterclaim Defendant. | |

## [PROPOSED] ORDER AND JOINT STIPULATION FOR THE EXCHANGE AND PRODUCTION OF ELECTRONICALLY STORED INFORMATION

It is stipulated and agreed by plaintiff/counterclaim defendant JKN Universe, LLC, and defendant/counterclaim plaintiff VVV Global Ent. LLC (together, the "Parties"), through their respective counsel, to comply with the procedures and obligations for the exchange and production of electronically stored information ("ESI") set forth below. If a provision of this agreement (the "ESI Stipulation") conflicts with the terms of the Joint Stipulation and Protective Order (ECF No. 94, the "Protective Order"), the Protective Order will control absent further order of the court. The Parties agree:

1

1.      **Format of Files for Production**

(a)      Digitized Paper Documents:

(i)      Black and white documents originally in paper/physical form will be digitized into single-page, group IV (G4) format, black and white TIFF files at 300 into single-page TIFF images, group IV format, 300 dots per inch (dpi).

(ii)      Color documents originally in paper/physical form will be digitized into single-page, group IV (G4) format, or single-page color TIFF, or single-page color JPG, or PDF files at 300 dots per inch (dpi).

(iii)      Every filename will match the document's Bates number, and be zero padded.

(iv)      The Parties will include with each production delivery an archival image link file as agreed (i.e., an Opticon (.OPT) file or similar).

(v)      The Parties will include standard Concordance default delimited text files as agreed in .DAT or similar format, and will include all available fielding data (where available), as agreed and set forth in the Metadata Table contained in **Attachment A** below, including but not limited to beginning and ending Bates numbers, beginning and ending attachment numbers, and number of pages except where otherwise agreed.

(vi)      The producing Party will apply Optical Character Recognition (OCR) software to all applicable documents and create OCR-searchable files in .TXT format for each page digitized as in (i) and (ii) above; filenames for .TXT files will synchronize with/be identical to the filename for the corresponding TIFF file (see (i) and (ii) above). Delivery TIFF files will be accompanied by the corresponding full text .TXT files.

(b)    <u>Documents Originating Electronically</u>: Standard electronic documents and emails will be produced as TIFF images in the manner described above in (a)(i) and (a)(ii); however, all attachments, addendums, enclosures, and/or exhibits to a parent document will be produced and identified as they relate to the respective parent document.

(i)    Digital documents will be produced with corresponding .TXT files as outlined above in section (a), as well as extracted metadata fields (where available), as agreed and set forth in the Metadata Table contained in **Attachment A** below.

(ii)    Extracted text, as opposed to OCR text, will be delivered with production and formatted in .TXT file as above with OCR text files.

(iii)    All spreadsheets, presentations, audio, video, and database files will be produced in native format and order of storage in native, ordinary course of business manner. For instance, emails with attached spreadsheets will be identified and linked per BEGATTACH and ENDATTACH fields below. To avoid unnecessary duplications, placeholder TIFF files will be produced to preserve the native location of files; placeholder will identify the document by associated Bates number, the original file name, and state that the document was natively produced. Available metadata and text will be produced in the same manner as other documents.

(iv)    If feasible, documents containing tracked changes and comments should be imaged showing tracked changes and comments. Produced email messages should include the BCC line.

(v)    The Parties will produce, upon request, documents or databases in native format if produced in TIFF or other static format (PDF, etc.) if inadequate in the form produced. Producing Party will provide native files with delimited TXT file containing BEGBATES,

3

ENDBATES, BEGATTACH, ENDATTACH, NATIVELINK, and HASH VALUE. A party shall not make unduly burdensome and unreasonable requests for production of documents in native format.

2.    Deduplication (Global)

The Parties agree that each producing Party shall globally de-duplicate its document production across all custodians prior to production. Global deduplication shall be performed at the family level (i.e., emails and their attachments must be kept together) using industry-standard hash values (e.g., MD5, SHA-1, or SHA-256). A single copy of a document shall be produced, along with a complete listing of all custodians from whom the document was collected in a "Custodian" or "Duplicate Custodian" metadata field, as defined in the Metadata Table below. No Party shall eliminate from production a unique attachment to an email on the basis that the attachment is a duplicate of an attachment to a different email. The Parties shall retain all deduplicated documents for the duration of the action, and agree to produce deduplicated documents for particular custodians upon receipt of a written request identifying the applicable Bates numbers and requested custodian(s) in writing.

3.    Email Threading

The Parties shall employ reasonable efforts to use email threading technology to reduce the burden of reviewing and producing documents. A Party shall employ reasonable efforts to produce email threads instead of producing each email as a separate document provided that the Party's production contains the unique, responsive emails and attachments associated with such an email thread.

4.    Use of Search Terms, Custodians, and Electronic Sources of ESI

The Parties shall meet and confer in response to requests for documents regarding the search terms, file types, date ranges, custodians, and electronic sources applicable to the production of ESI. The Parties will meet and confer in good faith to reach agreement on the production and will advise the Court if they are unable to resolve any disputed issues.

Any agreement between a producing Party and requesting Party regarding these parameters shall not preclude any Party from making additional reasonable requests for collection or searches of ESI in accordance with the terms of this ESI Stipulation. All Parties reserve all rights with respect to any such requests, including objecting in whole or in part.

The fact that a document may have been retrieved by application of the agreed upon parameters shall not prevent any Party from withholding from production such document for lack of responsiveness or privilege.

If a producing Party does not intend to use search terms, custodians and/or date ranges to identify and/or collect responsive ESI, the producing Party shall identify the method and/or means used to identify and/or collect responsive ESI to the requesting Party. In the absence of a mutually acceptable agreement on the process proposed by the producing Party, the producing Party or requesting Party may raise the matter with the Court in accordance with the Court's Individual Rules of Practice, Local Rules, and/or the Federal Rules of Civil Procedure, as applicable.

5.    Non-Party Documents

A Party that issues a subpoena upon any non-party ("Issuing Party") shall include a copy of this ESI Stipulation and any Protective Order agreed or entered in this litigation with

the subpoena and state that the Parties in this litigation have requested that non-parties produce documents in accordance with the specifications set forth herein.

The Issuing Party shall produce a copy to all other Parties of any documents and ESI (including any metadata) obtained under subpoena to a non-party in the format that the documents and ESI were received by the issuing party, provided that if a non-party production is not Bates-stamped, the Issuing Party will endorse the non-party production with unique Bates prefixes and numbering scheme prior to reproducing them to all other Parties.

6.      Privileged Material

To avoid unnecessary expense and burden, the Parties agree that, to the extent any Party redacts and/or withholds from production any ESI on the basis of attorney-client privilege, work product doctrine, and/or any other applicable privilege, the producing Party will prepare a privilege log listing the categories of documents that have been redacted or that the producing Party has withheld from production. The summary must contain for each category of documents claimed as privileged: (a) the date range for the documents within the category; (b) the types of documents within the category (Email, PDF, etc.); (c) the name(s) of the custodian(s) of the documents within the category or, if the documents within the category constitute communications and/or emails, the names of the parties to the communication; (d) a description of the general subject matter of the documents in the category; (e) the claimed privilege or protected status; (f) the number of documents within the category.

For each category of documents that may be established, the producing Party shall provide a certification setting forth with specificity those facts supporting the privileged or protected status of the information included within the category. The certification shall also describe the steps taken to identify the documents so categorized, including but not limited to

whether each document was reviewed or some form of sampling was employed, and if the latter, how the sampling was conducted. The certification shall be signed by counsel for the producing Party, or by the producing Party, through an authorized and knowledgeable representative.

If the requesting Party requires further information, it shall explain in writing the need for such information and identify the category or categories requiring additional information. Within seven days of such a request, the responding Party must either (i) provide the requested information; or (ii) object to providing the requesting information by explaining in writing the basis for withholding the requested information. If the responding Party objects to a request for further information, the Parties shall meet and confer within three business days to seek a mutually acceptable solution. If no such mutually acceptable solution is reached, then the Parties may raise the matter with the Court in accordance with the Court's Individual Rules of Practice, Local Rules, and/or the Federal Rules of Civil Procedure, as applicable.

7.      Clawback Mechanisms for Inadvertent ESI Disclosure

The Parties agree that inadvertent disclosure of privileged or protected documents/information will not constitute a waiver of any such privilege or protection and will apply the following procedures:

(a)      Notice

(i)      Within three business days from the date on which a producing Party discovers an inadvertent disclosure of ESI, it will notify the receiving Party by written Clawback Notice identifying the inadvertent disclosure(s) and directing the receiving Party to promptly return, destroy, and/or make inaccessible the inadvertently disclosed information/documents and all copies.

(b)    <u>Parties' Obligations</u>

(i)    Within three business days of receipt of the Notice, the receiving Party will inform the producing Party that compliance will be effectuated or challenge the Notice in a formal responsive writing. If the Notice is not challenged, the receiving Party will destroy, return, and/or disable all access to the specified documents/information within ten days or as agreed by the Parties.

(ii)    Where the inadvertent disclosure is in the form of a disc or access to a password-protected server, the producing Party must replace, upon receipt of intent to comply with the Notice, a replacement of the production containing all documents/information but for those identified in the Notice.

(iii)    The receiving Party will endeavor in good faith to retrieve any copies of the identified documents/information to return, destroy, or otherwise dispose of the materials, and take all steps necessary to prevent further sharing of those materials. The receiving Party will identify, in writing responsive to the Notice, the persons or entities that have received copies of the information/documents, identify the facts surrounding the sharing of those materials, and describe its best efforts to retrieve those materials in its affirmation of compliance.

(iv)    Any use of the identified inadvertent disclosures prior to receipt of the Notice is not a violation of this ESI Stipulation but may be subject to the provisions of the Protective Order.

(v)    If the receiving Party challenges the Notice, it will return, destroy, or disable all copies of the documents/information, but may retain one copy for the purpose of challenging the designation of privilege/protection or inadvertency of the disclosure.

(vi)    The Parties will meet and confer within two business days to resolve the dispute if the Notice is challenged, and, if not resolved, the Parties will request an immediate discovery conference pursuant to the Court's Individual Rules of Practice.

(vii)    Under all circumstances, the producing Party must preserve all documents/information subject to the Notice until any dispute has been resolved by the Parties' agreement or court order.

8.    Use of Technology Assisted Review ("TAR")

To the extent a producing Party intends to utilize TAR in its review of relevant documents, the producing Party agrees to meet and confer with the requesting Party to identify the TAR processes it plans to use and the methodology it intends to use to validate the process. Absent an agreement on the use of TAR, nothing in this paragraph shall operate to limit a producing Party's obligations to conduct a reasonable search for ESI and other documents under the Local Rules, Federal Rules of Civil Procedure, and applicable case law.

9.    Confidentiality Designations and ESI From Other Individuals/Entities

The Parties may designate documents as confidential or otherwise according to the terms of the Protective Order.

10.    Modification

This ESI Stipulation may be re-executed and/or modified by agreement of the Parties; for instance, to allow non-signatory parties to this action or nonparties producing ESI to join this agreement.

SQUIRE PATTON BOGGS LLP                    BARNES & THORNBURG LLP


By: /s/ *Digna B. French*                  By: /s/ *Robert C. Folland*
    Digna B. French                            Robert C. Folland

200 South Biscayne Boulevard, Suite 3400   3300 PGA Blvd., Suite 510
Miami, FL 33131                            Palm Beach Gardens, FL 33410
Tel: (305) 577-7000                        Tel: (561) 473-7565

*Attorneys for JKN Universe, LLC*          *Attorney for VVV Global Ent. LLC*

Dated: May 5, 2026                         Dated: May 5, 2026



**IT IS SO ORDERED:**

_____
Hon. Lewis J. Liman

May 5, 2026


10

**ATTACHMENT A**

Pursuant to Provision 1(B)(i) above, the Parties agree to include the information set forth and explained in the following Metadata Table:

| Name of Metadata Field | Description |
|---|---|
| BEGBATES | Beginning document number |
| ENDBATES | Ending document number |
| BEGATTACH | Beginning document number of family unit |
| ENDATTACH | Ending document number of family unit |
| CUSTODIAN | Individual from whom the document originated |
| DUPLICATECUSTODIAN | All custodians from whom the document or any duplicates originated |
| ATTACHMENTCOUNT | Number of attachments |
| AUTHOR | Author field extracted from the metadata of the native file |
| LAST AUTHOR | Last Saved By field extracted from the metadata of the native file |
| FROM | Sender of the e-mail message |
| RECIPIENT(S) | Recipient(s) of the e-mail message (To) |
| CC | Recipient(s) of "carbon copies" of the e-mail message |
| BCC | Recipient(s) of "blind carbon copies" of the e-mail message |
| SUBJECT | Subject field extracted from the metadata of the native file |
| SENTDATE | Date the e-mail message was sent (produced in "MM/DD/YYYY" format) |
| SENTTIME | Time the e-mail message was sent |
| FILE TYPE | Mail, attachment, individual file |
| FILE EXTENSION | File extension of document (.msg, .doc, .xls, etc.) |
| FILE NAME | Name of original file |
| TITLE | Title of a non-email document (Microsoft Title field) |
| ORIGINAL FOLDER PATH | Original folder/location of stored document. |
| HASH VALUE | MD5 or SHA-1 Hash Value, unique document identifier |
| NATIVELINK | Relative file path to each native file on production media |
| DATE CREATED | For non-emails (produced in "MM/DD/YYYY" format) |
| TIME CREATED | Created Time of the document. |
| DATE LASTMODIFIED | Date the document was last modified. |
| TIME LASTMODIFIED | Time the document was last modified. |
| TIME ZONE | The time-zone used to process the document. |
| CONFID DESIGNATION | "Confidential," "Highly Confidential" or "Null" |
| REDACTED | User-generated field that will indicate redactions. "X" is an acceptable indicator that the document is redacted. Otherwise, blank. |
| SOURCE | The name of the producing Party |
| TEXTPATH | Path and filename to textfile on production media |

11

| MessageID / Conversation Thread ID | A reference or pointer to a specific conversation or thread within a messaging or email system. |
| --- | --- |